## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DONALD R. PEVIA,                           *

Plaintiff                                  *

v                                          *          Civil Action No. ELH-20-2867

STEPHEN MOYER,  *et al.*,                  *

Defendants                                 *
                                          ***

## MEMORANDUM OPINION

Donald R. Pevia is a prisoner at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland.  On October 2, 2020, he filed suit under 42 U.S.C. § 1983 against Stephen Moyer, then Secretary of Department of Public Safety and Correctional Services ("DPSCS"); the Commissioner of DPSCS;[1] Warden Frank Bishop; Acting Warden G. Warren; Correctional Officers Jesse Lambert and "McKenzie"; and "Holly Hoover (Pierce), R.N.P.," alleging denial of his constitutional rights.  ECF 1.[2]

Defendants Moyer, Bishop, Warren, Lambert, and McKenzie (the "Correctional Defendants") have moved to dismiss, or, in the alternative, for summary judgment.  ECF 11.  It is supported by a memorandum.  ECF 11-1 (collectively, the "Motion").  Plaintiff opposes the Motion. ECF 13.  He has also moved to supplement and amend (ECF 14), supported by exhibits. Also pending are Correctional Defendants' motion for extension of time to file their dispositive motion (ECF 9) and plaintiff's motions for judgment by default (ECF 10), to appoint counsel

---

[1] The current Commissioner of the Division of Corrections is Wayne Hill. The Clerk shall be directed to amend the docket accordingly.

[2] Holly Hoover has not been served with the Complaint.

(contained in ECF 13-1, erroneously docketed as correspondence), and to supplement and amend (ECF 14).

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, the Correctional Defendants' motion for extension of time is granted *nunc pro tunc*.  Plaintiff's motions for default judgment and to appoint counsel are denied, but his motion to supplement and to amend his opposition is granted.  And, the defense Motion, construed as a motion to dismiss, is denied.

## I.      Non-Dispositive Motions

The Correctional Defendants' motion for extension of time to respond to the complaint (ECF 9) is reasonable.  Therefore, I shall grant the Motion, *nunc pro tunc*.  In light of their subsequent response to the Complaint, coupled with the fact that the delay did not prejudice plaintiff, I shall deny Pevia's motion for default judgment (ECF 10).

As to plaintiff's motion to appoint counsel, a pro se prisoner does not have a general right to counsel in a § 1983 action. *Evans v. Kuplinski*, 713 Fed. Appx. 167, 170 (4th Cir. 2017).  The power of a federal district court judge to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and an indigent claimant must present "exceptional circumstances." *Kuplinski*, 713 Fed. App'x at 170;  *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987).  Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Upon careful consideration of the motions and previous filings by plaintiff, the court finds that he has demonstrated the wherewithal either to articulate the legal and factual basis of his

claims himself or secure meaningful assistance in doing so.  The issues pending before the court are not unduly complicated.  Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent plaintiff under § 1915(e)(1).  Accordingly, the motion (ECF 13-1) is denied, without prejudice.

## II.  Factual Background

Plaintiff alleges that defendants violated his rights under the Eighth and Fourteenth Amendments to the Constitution by intentionally targeting him for disciplinary action due to his known drug abuse, without providing him access to any drug treatment programs; being present while confidential medical information was revealed and using that information against him; and denying him access to basic hygiene items.  ECF 1 at 9.

A.  Administrative Remedy Procedure ("ARP")  NBCI-0017-20

Plaintiff filed ARP NBCI-0017-20 on January 1, 2020, complaining that his rights under the Eighth and Fourteenth Amendments were violated because he was denied access to any drug treatment program.  ECF 1 at 3, 5.  Pevia explains that he is a known drug user who is targeted and retaliated against by prison staff who single him out for drug testing, which he routinely fails, and for which he is then placed on disciplinary segregation. *Id*. at 5.  Plaintiff alleges that although the urine tests are to be administered randomly he is regularly tested on the first day he is eligible.  Essentially, he states that he is not eligible for any drug addiction programming because of his housing assignment but his addiction and testing result in his repeated assignment to disciplinary segregation, which then prevents him from progressing to a housing assignment where he could access drug treatment.  *Id*.

In his opposition, plaintiff explains that he was randomly selected for urine testing three times between November 9, 2019, and March 8, 2020. ECF 14 at 2. He explains that on two of the

three occasions he was on cell restriction and also that policies prohibit an inmate from being tested twice within 30 days. *Id*. He provides copies of the notice of inmate rule infractions issued to him on November 2 and December 18, 2019, and March 17, 2020.  ECF 14-1 at 9-11. He also states that once he filed the instant Complaint, the targeted urine tests stopped. ECF 14 at 2.

Plaintiff alleges that Moyer is responsible for the rules and regulations throughout DPSCS, and the Commissioner of Correction is responsible for the operations of DPSCS facilities while Bishop and Warren are responsible for the operation of NBCI.  ECF 1 at 2.  He clarifies that Moyer, Bishop, and Warren are responsible for insuring that drug treatment programming is available with the federal funding DPSCS receives and they have failed to do so.  ECF 13 at 3.  According to Pevia, Moyer permits NBCI to operate without drug treatment.  *Id*.  He also asserts that Warren has advised that in order to participate in drug treatment plaintiff needs to work his way to Housing Unit 4, but no programs are available to allow him to do so.  *Id.* at 5.

Plaintiff provides evidence that the Warden denied his ARP regarding lack of access to drug treatment, and on appeal the Commissioner remanded the matter to the Warden for further consideration.  ECF 1at 3; ECF 1-1 at 1-12.  Warren then denied plaintiff's ARP on alternative grounds.  Plaintiff appealed the denial to the Commissioner and ultimately to the Inmate Grievance Office ("IGO"), where the appeal was denied.  *Id*.

B.  ARP NBCI-0562-20

On March 14, 2020, plaintiff filed an ARP complaining that after he sought drug treatment and filed ARP NBCI-0017-20 he was called to the medical room to discuss his drug addiction with Nurse Holly Hoover.  ECF 1 at 6.  During their conversation, Officers Lambert and McKenzie were present and interjected comments.  Although plaintiff objected to the presence of correctional staff while he discussed his drug use, Lambert advised him that as long has was properly trained

on HIPPAA he could remain.  *Id.*  The day after plaintiff's conversation with Hoover, plaintiff was called for a drug test, which he failed, and which resulted in his receiving a disciplinary infraction. *Id*.

Plaintiff claims that Hoover, Lambert, and McKenzie violated his right to due process by violating his privacy while he shared personal medical information and then using that information to single him out for the urine test.  *Id*. at 6-7.  He claims that Hoover was not interested in heling him with his drug addiction.  *Id*. at 6.  Further, plaintiff asserts that Lambert and McKenzie lied about their presence during his meeting with Hoover and the three used the information he provided during the visit to target him for a drug test.  ECF 13 at 5-6.

Plaintiff provides evidence that he attempted to exhaust his administrative remedies by filing an ARP, the denial of which he appealed to the Commissioner, and then ultimately to the IGO, which also denied his grievance.  ECF 1 at 3-4; ECF 1-2 at 13-18.

C.  ARP NBCI 1559-18

Plaintiff filed an ARP to the Warden, complaining that the welfare hygiene bag provided to him as an indigent inmate no longer contained dental floss loops to floss his teeth.  ECF 1 at 7. Plaintiff states that, as a result, he resorted to the use of thread from his bed linen, which cut his gums, causing bleeding, swelling, and lacerations, ultimately leading to an infection and deterioration of his dental hygiene.  *Id*. at 7-8.  Plaintiff states that Bishop is responsible for providing "welfare bags" to indigent inmates and that Moyer, Bishop, and Warren were each aware of and permitted the cut back in the contents of welfare bags.  ECF 13 at 5.

In his opposition, plaintiff provides copies of sick calls he submitted about his deteriorating dental hygiene along with copies of his dental records.  The documents indicate that the dentist

stressed the need for daily flossing and also demonstrating that the dentist found trauma to plaintiff's gums, due to his use of thread to floss.  ECF 14-1 at 19-20.

Plaintiff provides evidence that after his ARP was denied at the institution, he filed an appeal to the Commissioner and to the IGO, which also denied his grievance. ECF 1-2 at 19-24.

### III.    Standard of Review

The Correctional Defendants styled their motion as a motion to dismiss or, in the alternative, for summary judgment. As they have not provided any exhibits in support of their Motion, and for the reasons that follow, the court construes the Motion as one to dismiss.  I shall deny the Motion.

A defendant may test the legal sufficiency of a plaintiff's complaint by way of a motion to dismiss under Rule 12(b)(6).  *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir.  2010), *aff'd sub nom., McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  That rule provides that a complaint must contain a "short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317-18 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2).  *Twombly*, 550 U.S. at 555.  Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam).  But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'"  *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in *Retfalvi*) (quoting  *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015).  However, "a court is not required to accept legal conclusions drawn from the facts."  *Retfalvi*, 930 F.3d at 605 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A

court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

In connection with a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). But, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (emphasis in *Goodman*) (quoting *Forst,* 4 F.3d at 250).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th

Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, ___ U.S. ___, 135 S. Ct. 2218 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).[3]

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights

---

[3] "[B]efore treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167. "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Id*. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original).  *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

Because plaintiff is self-represented, his submissions are liberally construed.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord. Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## IV.   Discussion

The Correctional Defendants argue that plaintiff failed to exhaust his administrative remedies as to each of his claims; they are entitled to public official immunity; and plaintiff has not sufficiently pleaded personal participation.  ECF 11-1.  I disagree.

A.  Failure to Exhaust

The Correctional Defendants contend that plaintiff failed to "attach proof of exhaustion to his complaint" and did not provide proof that he sought judicial review in a Maryland Circuit Court, as required under Maryland law.  ECF 11-1 at 9.  The court does not construe plaintiff's Complaint as asserting any state law claims.  Therefore, the argument that he failed to comply with

the Maryland Prisoner Litigation Act, Md. Code, Cts. & Jud. Proc. § 5-1001 *et seq.*, is unavailing.

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996), (codified as amended at 42 U.S.C. § 1997e(a), governs cases brought by inmates in federal court. It states, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The grievance process is "important because it gives a prison a full 'opportunity to correct its own mistakes' before federal litigation is launched." *Moss v. Harwood*, ___ F.4th ___, 2021 WL 5702989, at *4 (4th Cir. Dec. 2, 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). The Supreme Court has said that the PLRA's exhaustion requirement allows "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see Moore v. Bennette,* 517 F.3d 717, 725 (4th Cir. 2008) (stating that exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).

The process is designed so that prisoners pursue administrative grievances until they receive a final decision as to the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase v. Peay*, 286 F. Supp. 523, 530 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004); *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where

plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).  Moreover, "given the PLRA's 'mandatory language,' there is no room to excuse a failure to exhaust all available remedies . . . ." *Moss*, 2021 WL 5702989, at *4 (citation omitted).

However, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not, as the Correctional Defendants contend, impose a heightened pleading requirement on the prisoner.  Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants.  *See Bock*, 549 U.S. at 215-16; *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies.  *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory.").  Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford*, 548 U.S. at 88, 93.  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id.* at 93 (quoting *Pozo*, 286 F.3d at 1024) (emphasis in original).  But, the court

is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

In Maryland prisons, for the type of grievances asserted by plaintiff, the Administrative Remedy Procedure is the administrative process that must be exhausted. *See* Code of Maryland Regulations ("COMAR"), § 12.02.28.02(B)(1), (D) (2018). First, a prisoner must file an ARP with the warden within 30 days of the incident at issue. COMAR § 12.02.28.05(D)(1) (requiring filing with the "managing official"); COMAR § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); COMAR § 12.02.28.09(B) (setting the 30-day deadline).

Second, if the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. COMAR § 12.02.28.14(B)(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code, §§ 10-206, 10-210 of the Correctional Services Article ("C.S."); COMAR § 12.07.01.05(B). Inmates may seek judicial review of the IGO's final determinations in a Maryland circuit court. *See* C.S. § 10-210(a). Although the final agency determination is subject to judicial review in a Maryland state court, contrary to Correctional Defendants' argument, an inmate is not required to seek such judicial review in order to satisfy the PLRA's administrative exhaustion requirement. *See Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

However, in *Ross v. Blake,* 578 U.S. 632 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id.* at 635. In particular,

it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 637. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 636. Notably, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable, so that an inmate's duty to exhaust available remedies "does not come into play." *Id.* at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. at 643-44. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644.

In his Complaint, plaintiff alleges that he exhausted his administrative remedies appealing the denial of his ARP to the Commissioner and then to the IGO as to each of his claims. And, he has provided some evidence that he is done so. The Correctional Defendants have failed to offer any evidence that plaintiff has not properly exhausted his available administrative remedies.

B. Immunity

The Correctional Defendants contend that they are entitled to immunity under Maryland law for any tortious acts or omissions occurring within the scope of their public duties. ECF 11-1 at 8; Md. Code § 5-522(b) of the Courts and Judicial Proceedings Article. As previously noted,

the court does not construe plaintiff's Complaint as asserting any state law claims.  As such, this defense is not applicable.

C.  Personal Participation

Lastly, the Correctional Defendants argue that plaintiff has failed sufficiently to plead personal conduct on the part of the named defendants in regard to the alleged constitutional violations.  ECF 11-1 at 11.

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation.  *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  But, the court disagrees with the Correctional Defendants' contention that plaintiff failed to allege adequately the personal participation by the Correctional Defendants in the alleged constitutional violations. Liberally construed, plaintiff alleges that Moyer, Bishop, and Warren are responsible for the policies he complains about, both as to drug treatment/testing and as to the welfare hygiene items available to him.  Further, he alleges that Hoover, Lambert, and McCarthy violated his rights during his medical appointment and thereafter by retaliating against him and targeting him in regard to urine testing. Plaintiff's allegations are sufficient to survive the Motion.

**IV. Conclusion**

For the foregoing reasons, the motion for extension of time is GRANTED and the Motion seeking dismissal is DENIED. Plaintiff's motions for default and to appoint counsel are DENIED and his motion to supplement is GRANTED. A separate Order follows.


December 7, 2021                                  _____/s/_____
Date                                             Ellen L. Hollander
                                                 United States District Judge