## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

DONALD R. PEVIA,                          *

Plaintiff,                                *

v.                                        *          Civil Action No. ELH-20-2867

STEPHEN MOYER, *et al.*,                   *

Defendants.                               *
                                       ***

## MEMORANDUM OPINION

Plaintiff Donald R. Pevia is a prisoner at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. On October 2, 2020, he filed a civil rights suit under 42 U.S.C. § 1983 against multiple defendants: Stephen Moyer, former Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS"); Wayne Hill, the Commissioner of Correction within DPSCS; Warden Frank Bishop; Acting Warden "G. Warren"; Correctional Officer ("C.O.") II Jesse Lambert; C.O. II "McKenzie"; and "Holly Hoover (Pierce), RNP". ECF 1. In general, Pevia complains about lack of access to treatment for substance abuse, violations of his rights to medical privacy, and retaliation in connection with random drug testing. He appended several exhibits to his suit, docketed collectively at ECF 1-2.

Hoover has filed a motion to dismiss or, alternatively, a motion for summary judgment. ECF 23. It is supported by a memorandum (ECF 23-1) (collectively, "Hoover Motion") and several exhibits. Pevia opposes the Hoover Motion (ECF 25), supported by an exhibit.[1]

Defendants Moyer, Hill, Bishop, Warren, Lambert, and McKenzie (the "Correctional Defendants") have moved to dismiss or, in the alternative, for summary judgment. ECF 29. The

---

[1] Plaintiff's response is titled "Plaintiff's Request For Summary Judgment And Motion To Deny Defendants [sic] Motion To Dismiss."

motion is supported by a memorandum (ECF 29-1) (collectively, "Correctional Defendants Motion") and an exhibit.  Plaintiff opposes the Correctional Defendants Motion and, in the alternative, seeks summary judgment.  ECF 34.

Also pending is plaintiff's "Motion to Uphold Your Honors Original Ruling." ECF 35 ("Uphold Ruling Motion").  In this regard, he appears to refer to my Memorandum Opinion (ECF 16) and Order (ECF 17) of December 7, 2021, in which, among other things, I denied an earlier dispositive motion (ECF 11) filed by the Correctional Defendants, advancing grounds that are not at issue here.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons that follow, I shall construe the Hoover Motion as a motion for summary judgment and grant it.  I shall dismiss the Complaint as to defendants Bishop, Warren, Hill, and Moyer.  As to defendants Lambert and McKenzie, I shall construe the motion as one for summary judgment and grant it.  Finally, I shall deny plaintiff's motions for summary judgment and the Uphold Ruling Motion.

## I.        Factual Background

In his suit, plaintiff asserts, *inter alia*, that he is "constantly targeted through the prisons [sic] urinalysis procedure, as a form of retaliation.  ECF 1 at 5.  He maintains that "theres [sic] no way" that the tests are "'Random.'"  *Id.*  Yet, he is denied needed drug treatment.  *Id.* Further, Pevia notes that after he filed a grievance about drug treatment, he was called to the medical room and was seen by Hoover.  *Id.* at 6.  He claims that Lambert and McKenzie were present during the visit, in violation of his rights.  *Id.*  He was also asked a number of questions by Hoover that he claims were "pointless," because of the lack of available drug treatment.  ECF 25 at 3.

In a Memorandum Opinion of December 7, 2021 (ECF 16), I considered an earlier motion to dismiss or, alternatively, for summary judgment, filed by the Correctional Defendants. *See* ECF 11; ECF 11-1. In that Memorandum Opinion, I summarized the factual background of the case and the contentions of Pevia, stating, in part, *id.* at 3-6:

> Plaintiff alleges that defendants violated his rights under the Eighth and Fourteenth Amendments to the Constitution by intentionally targeting him for disciplinary action due to his known drug abuse, without providing him access to any drug treatment programs; being present while confidential medical information was revealed and using that information against him; and denying him access to basic hygiene items. ECF 1 at 9.
>
> A.  Administrative Remedy Procedure ("ARP")  NBCI-0017-20
>
> Plaintiff filed ARP NBCI-0017-20 on January 1, 2020, complaining that his rights under the Eighth and Fourteenth Amendments were violated because he was denied access to any drug treatment program. ECF 1 at 3, 5. Pevia explains that he is a known drug user who is targeted and retaliated against by prison staff who single him out for drug testing, which he routinely fails, and for which he is then placed on disciplinary segregation. *Id.* at 5. Plaintiff alleges that although the urine tests are to be administered randomly he is regularly tested on the first day he is eligible. Essentially, he states that he is not eligible for any drug addiction programming because of his housing assignment but his addiction and testing result in his repeated assignment to disciplinary segregation, which then prevents him from progressing to a housing assignment where he could access drug treatment. *Id.*
>
> In his opposition, plaintiff explains that he was randomly selected for urine testing three times between November 9, 2019, and March 8, 2020. ECF 14 at 2. He explains that on two of the three occasions he was on cell restriction and also that policies prohibit an inmate from being tested twice within 30 days. *Id.* He provides copies of the notice of inmate rule infractions issued to him on November 2 and December 18, 2019, and March 17, 2020. ECF 14-1 at 9-11. He also states that once he filed the instant Complaint, the targeted urine tests stopped. ECF 14 at 2.
>
> Plaintiff alleges that Moyer is responsible for the rules and regulations throughout DPSCS, and the Commissioner of Correction is responsible for the operations of DPSCS facilities while Bishop and Warren are responsible for the operation of NBCI. ECF 1 at 2. He clarifies that Moyer, Bishop, and Warren are responsible for insuring that drug treatment programming is available with the federal funding DPSCS receives and they have failed to do so. ECF 13 at 3. According to Pevia, Moyer permits NBCI to operate without drug treatment. *Id.*

He also asserts that Warren has advised that in order to participate in drug treatment plaintiff needs to work his way to Housing Unit 4, but no programs are available to allow him to do so.  *Id.* at 5.

Plaintiff provides evidence that the Warden denied his ARP regarding lack of access to drug treatment, and on appeal the Commissioner remanded the matter to the Warden for further consideration.  ECF 1 at 3; ECF 1-1 at 1-12.  Warren then denied plaintiff's ARP on alternative grounds.  Plaintiff appealed the denial to the Commissioner and ultimately to the Inmate Grievance Office ("IGO"), where the appeal was denied.  *Id.*

B.  ARP NBCI-0562-20

On March 14, 2020, plaintiff filed an ARP complaining that after he sought drug treatment and filed ARP NBCI-0017-20 he was called to the medical room to discuss his drug addiction with Nurse Holly Hoover.  ECF 1 at 6.  During their conversation, Officers Lambert and McKenzie were present and interjected comments.  Although plaintiff objected to the presence of correctional staff while he discussed his drug use, Lambert advised him that as long as he was properly trained on HIPAA he could remain.  *Id.*  The day after plaintiff's conversation with Hoover, plaintiff was called for a drug test, which he failed, and which resulted in his receiving a disciplinary infraction.  *Id.*

Plaintiff claims that Hoover, Lambert, and McKenzie violated his right to due process by violating his privacy while he shared personal medical information and then using that information to single him out for the urine test.  *Id.* at 6-7.  He claims that Hoover was not interested in helping him with his drug addiction.  *Id.* at 6.  Further, plaintiff asserts that Lambert and McKenzie lied about their presence during his meeting with Hoover and the three used the information he provided during the visit to target him for a drug test.  ECF 13 at 5-6.

Plaintiff provides evidence that he attempted to exhaust his administrative remedies by filing an ARP, the denial of which he appealed to the Commissioner, and then ultimately to the IGO, which also denied his grievance.  ECF 1 at 3-4; ECF 1-2 at 13-18.

C.  ARP NBCI 1559-18

Plaintiff filed an ARP to the Warden, complaining that the welfare hygiene bag provided to him as an indigent inmate no longer contained dental floss loops to floss his teeth.  ECF 1 at 7.  Plaintiff states that, as a result, he resorted to the use of thread from his bed linen, which cut his gums, causing bleeding, swelling, and lacerations, ultimately leading to an infection and deterioration of his dental hygiene.  *Id.* at 7-8.  Plaintiff states that Bishop is responsible for providing "welfare bags" to indigent inmates and that Moyer, Bishop, and Warren were each aware of and permitted the cut back in the contents of welfare bags.  ECF 13 at 5.

In his opposition, plaintiff provides copies of sick calls he submitted about his deteriorating dental hygiene along with copies of his dental records. The documents indicate that the dentist stressed the need for daily flossing and also demonstrating that the dentist found trauma to plaintiff's gums, due to his use of thread to floss. ECF 14-1 at 19-20.

Plaintiff provides evidence that after his ARP was denied at the institution, he filed an appeal to the Commissioner and to the IGO, which also denied his grievance. ECF 1-2 at 19-24.

Among other things, I construed the motion as a motion to dismiss and denied it. ECF 16. In particular, I rejected the defenses of failure to exhaust, immunity under Maryland law for State law claims (because there are no State law claims in the case), and rejected the claim that the allegations of personal participation were not legally sufficient. *Id.*[2] I also provided for service on Hill and Hoover, and permitted supplementation of the record. ECF 17 (Order). Hoover has since supplemented the record.

Hoover submitted a Declaration (ECF 23-2), stating that she is a Certified Registered Nurse Practitioner ("CRNP") and that she was previously employed by "Corizon" at NBCI. *Id.* at 1, ¶ 2. She has practiced nursing since 2000. *Id.*

Hoover examined Pevia on March 3, 2020, for chronic pain. ECF 23-2 at 3, ¶ 7; ECF 23-3 (medical records) at 2-4. According to Hoover, while she was employed at NBCI, she had no control over the presence of correctional officers in the medical room during a medical examination of an inmate; their presence was dictated by security requirements, which allow for officers to be present in the health care area during exams due to safety concerns. ECF 23-2 at 2, ¶ 5; ECF 23-4 at 31 (NBCI Inmate Handbook) (providing that, due to safety concerns, "custody staff will be present in the health care area during visits.").

---

[2] Defendants did not specifically argue that there is no respondeat superior liability under 42 U.S.C. § 1983. That argument is advanced in the Motion.

At the chronic care examination, Pevia was prescribed Mobic and Capsaicin for his complaints of pain. ECF 23-2 at 3, ¶ 7.  Hoover noted that plaintiff's blood work was positive for buprenorphine and norbuprenorphine, which plaintiff had not been prescribed. *Id*.

Buprenorphine is an opioid used to treat pain and opioid use disorder and has a high risk for abuse and dependence. *Id*.  And, it is not prescribed in prisons because it creates security risks. *Id*.  Norbuprenorphine is "a major active metabolite of buprenorphine". *Id*.  Hoover advised plaintiff of the dangers in using buprenorphine and other medications not prescribed.  *Id*. ¶ 8.

Plaintiff allegedly told Hoover he wished to stop using buprenorphine.  *Id*.  As there were no buprenorphine or suboxone treatment programs at NBCI, because those medications are not prescribed in prison settings, Hoover referred plaintiff to mental health counseling.  *Id*.  According to Hoover, that was the "only course of treatment" that she was able to offer and, in her view, it was appropriate under the circumstances. *Id*.

Additionally, Hoover avers that searches of inmates may occur randomly or for cause.  ECF 23-2 at 2, ¶ 5 (citing ECF 23-4 at 15).   But she denies that she retaliated against plaintiff or targeted him for drug testing.  ECF 23-2 at 2, ¶ 6.  Moreover, Hoover specifically denies that she instructed or asked an officer to conduct a drug test of any inmate.  *Id*.  And, she insists that she never reported that plaintiff was using or smuggling drugs.  *Id*. at 3.  She also explains that she had no role in determining when an inmate would be drug screened; such screening was a security function.  *Id*.

According to plaintiff, he and Hoover "greatly dislikes [sic] each other."  ECF 25 at 3.  He points out that the NBCI Handbook permitted staff "in the health care <u>AREA</u>" but not in the "med room."  *Id*. at 2.  Pevia adds that he was not a security threat, *id.*, and when he "expressed his concern, Hoover should have asked Ofc. Lambert and McKenzie to leave [the examination room].

6

Medical overrides security." ECF 25 at 3. And, Hoover allowed the officers to be present during his examination on March 3, 2020. *Id.*

Plaintiff agrees that Hoover "can't drug test inmates." *Id.* But, he claims that Hoover can notify the administration of someone's drug use. *Id.* Pevia asserts that on March 5, 2020, soon after he saw Hoover, he was directed to submit to a random drug test, which occurred on March 8, 2020. ECF 25 at 5; ECF 25-1 at 1. In Pevia's view, this directive was not "a coincidence . . . " ECF 25 at 5.

On December 18, 2020, the Warden denied plaintiff's ARP NBCI-0017-20, concerning drug treatment. ECF 1-2 at 5. In denying that ARP, the Warden stated that there was no evidence that NBCI received funding for alcoholics anonymous or narcotics anonymous groups. *Id.* Nevertheless, those groups are available to inmates upon the request of a social worker as voluntary programs. Multiple, unspecified factors are considered before an inmate is placed into a particular program. *Id.* Plaintiff was also advised by the Warden that he could "request self-help work books and literature from the social work and case management departments." *Id.*

Further, the Warden noted plaintiff's extensive adjustment history, most of which was not related to substance abuse. He advised that plaintiff's poor behavior prevented his progression to a lower classification and security level, which would provide him with the opportunity for more programming. *Id.*

## II.     Standard of Review

### A.

Pevia is self-represented. Therefore, his submissions are liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-

represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Shaw v. Foreman*, ___ F.4th ___, 2023 WL 1486310, at *4 (4th Cir. Feb. 3, 2023) (recognizing the "leniency" in treatment of pro se submissions, "necessarily requiring . . . thoughtful consideration [by the court] of all factual allegations, and  not just expressly pled claims"); *Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013).  But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)), *cert. denied*, 541 U.S. 1042 (2004).

### B.

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  *See* ECF 23, 29.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see*

*Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.).  But, this discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id.* at 149.  In general, courts are guided by whether consideration of extraneous material

"is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Shaw*, 2023 WL 1486310, at *4; *Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. *See Shaw*, 2023 WL 1486310, at *4; *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021); *Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven*

10

*Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit acts at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Pevia has not sought discovery.  I am of the view that it is appropriate to address the Motion filed by Moyer, Hill, Bishop, and Warren as a motion to dismiss.  But, I shall consider the Hoover Motion, as well as the motion of Lambert and McKenzie, as ones for summary judgment. This approach will facilitate resolution of the case.

## C.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Fessler v. Int'l Bus. Machs. Corp.*, 959 F.3d 146, 152 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young,* 569 U.S. 221 (2013); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999).  A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'...."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan*, 918 F.3d at 317; *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if...[the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, "a court 'must accept as true all of the factual allegations contained in the complaint' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration

in *Retfalvi*) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)); *see Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015).  But, a court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty*., 628 F.3d 140, 146 (4th Cir. 2010).

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought.  *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).  But, "[m]ere recitals of a cause of action, supported only by conclusory statements, are insufficient to survive" a Rule 12(b)(6) motion.  *Morrow v. Navy Fed. Credit Union*, No. 21-2323, 2022 WL 2526676, at *2 (4th Cir. July 7, 2022).

Through a Rule 12(b)(6) motion, courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'"  *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (citation omitted); *see Bing v. Brio Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020).  However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)."  *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies...if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the*

14

*complaint.*'" *Goodma*n, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd*., 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co*., 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein...." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed. v. Town of Gilbert*, 576 U.S. 155 (2015); *see Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (internal citations omitted).  In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit

to a pleading is a part of the pleading for all purposes."); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 558 (2017); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)); *see USA Eng. Language Ctr. v. Accrediting Council for Continuing Educ. & Training, Inc.*, 2021 WL 3162671, at *2 (4th Cir. July 27, 2021) (per curiam).  And, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167.  In other words, the "general rule" is that "the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of a complaint." *Id.* at 165.  But, "in cases where the plaintiff attaches or incorporates documents for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of the document as true." *Id.* at 167.

### D.

Summary judgment is governed by Fed. R. Civ. P. 56(a).  It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *See Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-24 (1986); *see also Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020); *Variety Stores, Inc. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018); *Iraq Middle Mkt. Dev. Found v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017). To avoid summary judgment, the nonmoving party must demonstrate that there is a genuine dispute of material fact so as to preclude the award of summary judgment as a matter of law. *Ricci v. DeStefano*, 557 U.S. 557, 585-86 (2009); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 585-86 (1986); *see also Gordon v. CIGNA Corp*., 890 F.3d 463, 470 (4th Cir. 2018).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248; *see Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020). There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Sedar v. Reston Town Ctr. Prop., LLC*, 998 F.3d 756, 761 (4th Cir. 2021); *CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc.*, 888 F.3d at 659; *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 522 (quoting former Fed. R. Civ. P.

56(e)).   Moreover, the nonmovant "must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (internal quotation marks omitted).

The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020); *Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).   Thus, the trial court may not make credibility determinations on summary judgment.   *Kellen v. Lott*, No. 21-6928, 2022 WL 2093849, at *1 (4th Cir. June 10, 2022) (per curiam); *Betton v. Belue*, 942 F.3d 184, 190 (4th Cir. 2019); *Wilson v. Prince George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of the Courts,* 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French,* 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45.   Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

That said, "conclusory allegations or denials, without more, are insufficient to preclude" the award of summary judgment. *Wai Man Tom*, 980 F.3d at 1037 (citation omitted). Moreover, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (quoting *Williams v. Giant Food Inc*., 370 F.3d 423, 433 (4th Cir. 2004)). And, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987); *see also, e.g.*, *Reddy v. Buttar*, 38 F.4th 393, 403-04 (4th Cir. 2022); *CTB, Inc.*, 954 F.3d at 659; *Harris v. Home Sales Co*., 499 Fed. App'x 285, 294 (4th Cir. 2012).

Notably, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). But, if testimony is based on personal knowledge or firsthand experience, it can constitute evidence of disputed material facts, even if it is uncorroborated and self-serving. *Lovett v. Cracker Barrel Old Country Store, Inc*., 700 Fed. App'x 209, 212 (4th Cir. 2017). Indeed, "'a great deal of perfectly admissible testimony fits'" the "'description'" of "'self-serving.'" *Cowgill v. First Data Technologies, Inc.*, 41 F. 4th 370, 383 n.8 (4th Cir. 2022) (citing *United States v. Skelena*, 692 F.3d 725, 733 (7th Cir. 2012)).

In sum, to defeat summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Judd*, 718 F.3d at 313. On the other hand, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

### III.   Discussion

The Correctional Defendants advance a host of contentions.  They argue that they are immune from suit for claims asserted against them in their official capacity; they are entitled to qualified immunity; there is no respondeat superior liability under § 1983; Pevia has no constitutional right to participate in addiction rehabilitation programs; plaintiff's claim is not actionable under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*;[3] plaintiff has failed to state a claim against the Correctional Defendants; plaintiff has failed to state a Fourteenth Amendment Right to Privacy Claim; and plaintiff has failed to state an Eighth Amendment claim regarding lack of hygiene items.  ECF 29.

Hoover argues that plaintiff's Fourteenth Amendment privacy claim and his HIPAA claim must be dismissed.[4]  Further, she claims that she is entitled to summary judgment as to plaintiff's claim that she failed to assist him in seeking treatment for his drug addiction or that she retaliated against him. ECF 23.

### A.  Official Capacity Claims

To the extent plaintiff has sued a defendant in his or her official capacity, seeking monetary damages, his claims may not proceed.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

---

[3] The court does not read plaintiff's Complaint as pleading a violation of the ADA and declines to address Correctional Defendants' arguments on this issue.

[4] The suit does not expressly assert a HIPAA claim.  But, in ECF 25 at 5, Pevia claims that Hoover violated HIPPA by allowing the officers to be present for his "interview."

United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend XI.

The Eleventh Amendment did not create sovereign immunity. Rather, it preserved the sovereign immunity that the states enjoyed prior to the formation of the Union. *See Alden v. Maine*, 527 U.S. 706, 724 (1999); *see also Sossamon v. Texas*, 563 U.S. 277, 284 (2011). The preeminent purpose of state sovereign immunity is "to accord states the dignity that is consistent with their status as sovereign entities[.]" *Fed. Mar. Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 760 (2002).[5]

Sovereign immunity "protects the States, their agencies, and State officials acting in their official capacities from being sued in federal court without their consent." *Murphy v. Commonwealth of Virginia*, 2022 WL 17484286, at *1 (4th Cir. Dec. 7, 2022) (per curiam); *see Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012) ("A foundational premise of the federal system is that States, as sovereigns, are immune from suits for damages, save as they elect to waive that defense."); *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting states may not be sued by private individuals in federal court."); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against

---

[5] In *Williams v. Morgan State Univ.*, 850 F. App'x 172, 174 (4th Cir. 2021) (per curiam), the Court described the Eleventh Amendment as a "rather narrow and precise provision . . . ." *Id.* It said: "While courts often discuss both doctrines [, *i.e.*, State sovereign immunity and Eleventh Amendment immunity] under the banner of Eleventh Amendment immunity, 'the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.'" *Id.* The Court explained that, "'as the Constitution's structure, its history, and the authoritative interpretations by [the Supreme] Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today.'" *Id.* (alteration in *Williams*) (quoting *Alden*, 527 U.S. at 713).

unconsenting States was not contemplated by the Constitution when establishing the judicial power of the United States.") (internal quotation marks and citation omitted); *see also Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("[Section] 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States[.]"); *Allen v. Cooper*, 895 F.3d 337, 347 (4th Cir. 2018).

The Supreme Court has explained: "Although by its terms the [Eleventh] Amendment applies only to suits against a State by citizens of another State, our cases have extended the Amendment's applicability to suit for damages by citizens against their own States." *Garrett*, 531 U.S. at 363 (collecting cases); *see Pense v. Md. Dep't of Public Safety and Correctional Services*, 926 F.3d 97, 100 (4th Cir. 2019) ("The Supreme Court 'has drawn on principles of sovereign immunity to construe the Amendment to establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'") (quoting *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)); *see also*, *e.g.*, *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011); *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 618 (2002); *Kimmel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-73 (2000); *Passaro v. Virginia*, 935 F.3d 243, 247 (4th Cir. 2019), *cert. denied*, __ U.S.__, 140 S. Ct. 903 (2020).

Sovereign immunity is "a weighty principle, foundational to our constitutional system." *Cunningham v. Lester*, 990 F.3d 361, 365 (4th Cir. 2021).  Moreover, the defense of sovereign immunity is a jurisdictional bar.  As the Fourth Circuit has explained, "'sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction.'" *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018) (citation omitted), *cert.*

*denied*, ___U.S. ___, 139 S. Ct. 417 (2018).  Thus, in the absence of waiver or a valid congressional abrogation of sovereign immunity, the states enjoy immunity from suits for money damages brought in federal court by their own citizens.  *See Hans v. Louisiana*, 134 U.S. 1, 3 (1890).

Sovereign immunity bars suit not only against a state, but also against an instrumentality of a state, such as a state agency, sometimes referred to as an "arm of the state."  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."); *see also Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Pense*, 926 F.3d at 100; *McCray v. Md. Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014); *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 479 (4th Cir. 2005).

Put another way, sovereign immunity applies when "'the governmental entity is so connected to the State that the legal action against the entity would . . . amount to the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties.'" *Lane v. Anderson*, 660 F. App'x 185, 195-96 (4th Cir. 2016) (quoting *Cash v. Granville Cty. Bd. of Educ.*, 242 F.3d 219, 224 (4th Cir. 2001)) (cleaned up).[6]  But, "the burden of proof falls to an entity seeking immunity as an arm of the state, even though a plaintiff generally bears the burden to prove subject matter jurisdiction." *Williams v. Big Picture Loans, LLC*, 929 F.3d 170, 176 (4th Cir. 2019) (citing *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir. 2014)); *see DiCocco v. Garland*,  18 F.4th 406, 414 (4th Cir. 2021).

---

[6] In contrast, sovereign immunity "does not immunize political subdivisions of the state, such as municipalities and counties, even though such entities might exercise a 'slice of state power.'" *Ram Ditta by and through Ram Ditta v. Md. Nat. Capital Park & Planning Comm'n*, 822 F.2d 456, 457 (4th Cir. 1987) (quoting *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401 (1979)).

Of relevance here, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted); *see Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.  Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." (internal quotation marks omitted)); *Murphy*, 2022 WL 17484286, at *2.

Additionally, "[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam).  "And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101–02.

There are exceptions to the Eleventh Amendment's prohibition of a suit against a state or an arm of the state.  *In Lee-Thomas v. Prince George's County Public Schools,* 666 F.3d 244 (4th Cir. 2012), the Court said, *id.* at 249 (internal quotations omitted):

> First, Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority. *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) . . . .  Second, the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) . . . .  Third, a State remains free to waive its Eleventh Amendment immunity from suit in a federal court. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002).

Notably, "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Graham*, 473 U.S. at 167,

n. 14).   Moreover, personal capacity suits, which seek to impose individual liability on a government official for an action taken under color of State law, are also not barred by the Eleventh Amendment.  *Murphy*, 2022 WL 17484286, at *2.

As mentioned, a state may waive its sovereign immunity and permit suit in federal court.  *See Lapides*, 535 U.S. at 618; *see also Pense*, 926 F.3d at 101; *Lee-Thomas*, 666 F.3d at 249.  But, the test to determine whether a state has waived its immunity from suit in federal court is a "stringent" one.  *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985), *superseded on other grounds, as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996); *see Pense*, 926 F.3d at 101.  Under *Atascadero*, 473 U.S. at 254, a court may find that a state has waived its immunity "only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." (internal quotation marks and alteration omitted); *accord Pense*, 926 F.3d at 101; *Lee-Thomas*, 666 F.3d at 250-51.

Notably, "[t]he doctrine of sovereign immunity has long been recognized as applicable in actions against the State of Maryland and its official representatives."  *Stern v. Bd. Of Regents, Univ. Sys. Of Md.*, 380 Md. 691, 700, 846 A.2d 996, 1001 (2004).  The State of Maryland has not waived immunity for claims brought against it in federal court, pursuant to § 1983.  Based on the foregoing, the individual defendants, in their official capacities, are immune from suit for monetary damages under 42 U.S.C. § 1983.

In contrast, the Eleventh Amendment does not bar plaintiff's request for prospective injunctive relief.  I discuss plaintiff's claim for injunctive relief, *infra*.

B.  Respondeat Superior

Plaintiff names as defendants supervisory officials Stephen Moyer, Wayne Hill, Warden Frank Bishop, and Acting Warden D. Warren. The doctrine of respondeat superior does not apply

in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).[7]   Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'"   *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).

Ultimately, to establish supervisory liability under § 1983, the plaintiff must show that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

At this juncture, plaintiff must allege facts that, if proven, would establish such liability. Where, as here, a plaintiff points to no action or inaction on the part of supervisory defendants that resulted in a constitutional injury, the claims against supervisory personnel must be dismissed. As such, Moyer, Hill, Bishop, and Warren are entitled to dismissal of the suit as to them.

C.  Fourteenth Amendment

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." A plaintiff may bring a civil action to redress due process violations under 42 U.S.C. § 1983. To establish a substantive due process

---

[7]   Respondeat superior is a legal doctrine that provides an employer is liable in certain instances for the wrongful acts of an employee. *See Black's Law Dictionary* (8th ed. 2004).

claim, a plaintiff must first show the existence of a protected property or liberty interest. *Mathews v Eldridge*, 424 U.S. 319, 332 (1976); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

In the prison context, there are two different types of constitutionally protected liberty interests that may be created by government action. The first occurs when there is a state-created entitlement to an early release from incarceration. *Bd. of Pardons v. Allen*, 482 U.S. 369, 381 (1987) (state-created liberty interest in parole); *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (state-created liberty interest in good-conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see Wilkinson v. Austin*, 545 U.S. 209, 222-24 (2005) (applying the "*Sandin* standard"). As the Fourth Circuit has noted, "[t]he Supreme Court has long recognized that a prisoner may have a state-created liberty interest in certain prison confinement conditions." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). Whether confinement conditions are atypical and substantially harsh "in relation to the ordinary incidents of prison life" is a "necessarily . . . fact specific" comparative exercise. *Beverati v. Smith*, 120 F.3d 500, 502-03 (4th Cir. 1997).

"[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976).  But, courts generally defer to decisions made by officials relating to their administration of a prison facility.  *Bell v. Wolfish,* 441 U.S.520,  547 (1979).  As the Supreme Court has cautioned, "[t]he difficulties of operating a detention center must not be underestimated by the courts."  *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012).

1. Programming

It is well established that prisoners do not have a constitutional right to drug treatment, education, or jobs. *See Sandin*, 515 U.S. at 484; *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *see also Kitchen v. Upshaw*, 286 F. 3d 179, 187 (4th Cir. 2002) (holding inmate had no liberty interest in participating in work release program and therefore was not entitled to due process protections); *see Abraham v. Danberg*, 832 F. Supp. 368, 375 D. De. 2011) (holding no right to drug treatment or other rehabilitation); *Lyle v. Sivley*, 805 F. Supp. 755, 759-60 (D. Ariz. 1992) (holding Due Process Clause does not protect right to enter drug treatment program); *Pace v. Fauver*, 479 F. Supp. 456, 459-60 (D. N.J. 1979) (no due process violation in state's failure to provide alcohol rehabilitation programs); *Searcy v. Culhane*, 2009 WL 1864028 (E.D. Mich. June 29, 2009) (no due process violation in plaintiff's removal from drug treatment program because plaintiff did not have right to participate in the treatment program).

In analyzing inmate assignments to programming, the court must consider a correctional system's need to maintain order, discipline, and control. *See Sandin*, 515 U.S. at 482 (stating that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment"). But, absent a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated, because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Plaintiff's exclusion from participation in a drug or alcohol program due to his security status or housing assignment, or because of program unavailability, has neither restrained plaintiff's liberty in excess of his sentence nor imposed an atypical and significant hardship. Pevia has not stated a viable Due Process Claim on this basis.

2.  Privacy

To the extent that plaintiff claims that his right to due process was violated when correctional officers Lambert and McKenzie were present during his medical examination, his claim also fails. The constitutional claim plaintiff asserts via the Fourteenth Amendment is a violation of his right to privacy. Specifically, his claim pertains to his interest in avoiding disclosure of personal information. *See Whalen v. Roe*, 429 U.S. 589, 599-600 (1977).

The right to privacy extends to a person's interest in avoiding the disclosure of personal matters for which the person has a reasonable expectation of privacy. *Payne v. Taslimi*, 998 F. 3d 648, 655 (4th Cir. 2021), *cert. denied*, ___ U.S. ___, 2021 WL 5869448 (Dec. 13, 2021).  In *Walls v. St. Petersburg*, 895 F. 2d 188 (4th Cir. 1990), the Court adopted a two part test: (1) is "the information sought . . . entitled to privacy protection" and if so; (2) does "a compelling governmental interest in disclosure outweigh[] the individual's privacy interest." *Id.* at 192.

However, an inmate's reasonable expectations of privacy are limited.  *Payne*, 988 F.3d at 658 (holding inmate lacked reasonable expectation of privacy in information regarding his HIV status).  In *Payne*, the inmate's HIV status was disclosed in the medical unit.  The *Payne* Court rejected the inmate's contention that he had a "reasonable expectation of privacy in the secondary disclosure of his diagnosis," finding that "[w]here an inmate lacks a reasonable expectation of privacy, he lacks it for all purposes." *Id.* at 658-59. "The limits on an inmate's expectations of privacy are particularly strong where the information he seeks to protect relates to the institutional safety of the prison."  *Id.* at 659 (citing *Hudson v. Palmer*, 468 U.S. 517, 526 (1984)).

The information discussed here, plaintiff's drug use and desire for treatment, was shared within the medical unit, a relevant place for discussing such information. Hoover's effort in educating plaintiff regarding the risks of drug use and offering a referral for mental health

29

counseling was responsive to plaintiff's stated desire to stop using drugs as well as institutional security, where the use of drugs creates security and safety issues.  That security officers were present goes hand in hand with the needs of a penal institution.

In short, plaintiff lacked a reasonable expectation of confidentiality in regard to the discussion of his medical information. Hoover, Lambert, and McKenzie are entitled to summary judgment.

3. Conclusion

In considering each of plaintiff's due process claims, I am unaware of any Maryland law or regulation conferring a protected liberty interest on DPSCS inmates that has been abridged here. As stated, plaintiff had no liberty interest in accessing a drug rehabilitation program or in his confidential medical information within the prison setting. Reviewing plaintiff's allegations in the light most favorable to him, there are no genuine issues of material fact and all defendants are entitled to summary judgment in their favor concerning plaintiff's Fourteenth Amendment claims.

D. HIPAA

To the extent plaintiff intended to assert a claim under the Health Insurance and Portability Accountability Act ("HIPAA"), the claim must be dismissed. At its core, a civil rights action under 42 U.S.C. § 1983 is directed to unlawful conduct under color of law.  *See Owens v. Baltimore State's Att'y Office*, 767 F.3d 379, 402 (4th Cir. 2014), *cert. denied,* 575 U.S. 983 (2015). Section 1983 provides, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  In analyzing a § 1983 claim, a court must first identify "the specific constitutional right allegedly infringed." *Albright,* 510 U.S. at 271.

Plaintiff contends his rights under HIPAA, 42 U.S.C. §1320d *et seq.*, were violated when Hoover permitted Lambert and McKenzie to remain in the room during his medical appointment. Plaintiff's claim must be dismissed as HIPAA does not create a private right of action. *Payne*, 998 F. 3d at 660.

E.   Retaliation

Plaintiff claims that shortly after his medical appointment with Hoover on March 3, 2020, he was targeted for drug testing, which he claims was an act of retaliation. As noted earlier, Pevia seems to contend that the drug test he had in March 2020 was conducted in retaliation for his filing of an ARP. *See* ECF 1 at 5-6.  This suggests that plaintiff claims that he was drug tested in retaliation for exercising his right to free speech, *i.e.*, by seeking assistance for his drug addiction or for his complaint about not obtaining treatment.

As to a claim of First Amendment retaliation, the question, "from an objective standpoint," is "whether the challenged conduct would 'likely deter a person of ordinary firmness from the exercise of First Amendment rights.'" *Snoeyenbos v. Curtis*, ___ F.4th ___, 2023 WL 2129140, at *5 (4th Cir. Feb. 21, 2023) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005)).  And, "the challenged conduct" must "generate more than a de minimis inconvenience.  *Curtis*, 2023 WL 2125140, at *5.

Notably, "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," but "incarceration does not divest

prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228-29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Although prisoners retain First Amendment rights, those rights are not unlimited and may be curtailed by prison officials under appropriate circumstances. *Jones v. N.C. Prisoner's Labor Union, Inc.*, 433 U.S. 119, 125 (1977) (upholding prison regulations limiting prisoner's speech regarding the operation of a prisoner union).

The Fourth Circuit has said that "'[a]n action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate.'" *Martin v. Duffy*, 977 F. 3d 294, 304 (4th Cir. 2020) (citation omitted) (brackets in *Martin*). To state a claim of retaliation for exercising a First Amendment right, a plaintiff must allege that: (1) the plaintiff engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected the First Amendment rights; and (3) there was a causal relationship between the protected activity and the defendant's conduct. *See Shaw v. Foreman*, ___ F.4th ___, 2023 WL 1486310, at *6 (4th Cir. Feb. 3, 2023); *Martin v. Duffy*, 858 F.2d 239, 249 (4th Cir. 2017); *Constantine*, 411 F.3d at 499.

In evaluating a causal relationship in a retaliation claim, the plaintiff must satisfy a prima facie burden to show that his protected activity was "a substantial or motivating factor" in the defendant's action. *Martin*, 977 F.3d at 299; *see Shaw*, 2023 WL 1486310, at *6. In the posture of this case, to meet the element of causation, the plaintiff must allege 1) that the defendant was aware of the protected activity and 2) "some degree of temporal proximity to suggest a causal connection." *Constantine*, 411 F.3d at 501.

In the prison context, courts "treat [claims of retaliation] with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)); *Martin*, 977 F.3d at 306 (courts view claims in the prison context with eye toward avoiding "'excessive judicial involvement in administration.'" (quoting *Pratt v. Rowland*, 65 F.3d 803, 807) (9th Cir. 1995). As such, an inmate cannot simply assert a generalized retaliatory animus but must allege facts that support the claim of retaliation. *White v. White*, 886 F. 2d 721, 724 (4th Cir. 1989). Moreover, a retaliation claim fails if there is a legitimate reason for the alleged retaliatory action. *Mt. Healthy City Sch. Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

Hoover denies that she retaliated against plaintiff. She explains that she had no authority to order drug testing and did not report plaintiff's drug use to any correctional staff or direct that Pevia be subjected to drug testing. Plaintiff has put forth no evidence to counter Hoover's assertions.[8] Accordingly, Hoover is entitled to summary judgment with respect to plaintiff's retaliation claim.

As to the Correctional Defendants, plaintiff has failed to allege that any of the named Correctional Defendants were responsible for the drug testing that occurred several days after plaintiff's appointment with Hoover. He does not provide specific information regarding the alleged "targeting," other than his assertion that he was "randomly" drug tested three times over the span of several months. Notably, on each occasion Pevia failed the drug test.

---

[8] As noted, plaintiff claims that he was repeatedly subjected to random drug testing. This assertion seems to undercut the contention that Hoover was the culprit in March 2020.

Based on the record before the court, plaintiff does not establish a prima facie case of retaliation. Rather, he presents unadorned allegations to support a retaliation claim. The Correctional Defendants are entitled to summary judgment on this claim.

F.    Eighth Amendment

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *DeLonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). The protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Raynor*, 817 F.3d at 127.

In general, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Hixson*, 1 F.4th at 302; *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017). The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38).

Under the objective prong, a plaintiff must demonstrate that the alleged deprivation was "'extreme'—meaning that it poses a 'serious or significant physical or emotional injury resulting from the challenged conditions,' or 'a substantial risk of serious harm resulting from . . . exposure to the challenged conditions.'" *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019) (quoting *Scinto*, 841 F.3d at 225).[9]  To demonstrate the subjective component, a plaintiff must show deliberate indifference, meaning "'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'"  *Porter*, 923 F.3d at 361 (quoting *Scinto*, 841 F.3d at 225) (alterations in *Porter*).

"Deliberate indifference is 'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'"  *Scinto*, 841 F.3d at 225 (alternation in original) (quoting *Farmer*, 511 U.S. at 837); *see Washington v. Housing Authority of the City of Columbia*, 58 F.4th 170, 178 (4th Cir. 2023); *see also King*, 825 F.3d at 219 (stating that although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" )(quoting *Farmer*, 511 U.S. at 835). A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge or circumstantial evidence tending to establish such knowledge, including evidence "'that a prison official knew of a substantial risk from the very fact that a risk was obvious.'"  *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842).

---

[9] For example, in the context of a claim concerning inadequate medical care, the subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind."  *Wilson*, 501 U.S. at 298.

In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995). "[O]nce prison officials become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take corrective action when warranted." *Williams v. Griffin*, 952 F.2d 820, 826 (4th Cir. 1991).

Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. The Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young*, 238 F.3d at 575-76 ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care."); *see also Washington*, 58 F.4th at 179; *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 416 (4th Cir. 2020); *Mays*, 992 F.3d at 300.

The requisite state of mind is one of deliberate indifference to inmate health or safety. "[I]t is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (emphasis in *Lightsey*).

Even if the requisite subjective knowledge is established, however, an official may still avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light

of the risk the defendant actually knew at the time.  *See Brown v. Harris*, 240 F. 3d 383, 390 (4th

Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions

actually taken in light of suicide risk, not those that could have been taken)).

1.  Lack of Drug Treatment

The evidence before the court demonstrates that, in response to plaintiff's request for drug

treatment, Hoover referred him to mental health counselling. In her view, the referral to mental

health counselling was appropriate.

As to the Correctional Defendants, in response to plaintiff's ARP, he was advised by the

Warden that alcoholics and narcotics anonymous groups were available at NBCI to inmates upon

a request by a social worker and upon consideration of a number of undefined factors (which

plaintiff states include classification, disciplinary, and housing status). The programs are

voluntary. Plaintiff was also advised that he could request self help work books and literature from

a social worker and/or his case manager. There is no evidence that plaintiff availed himself of any

of the treatment options offered to him.

Plaintiff has failed to allege or demonstrate that any of the named defendants were aware

of a risk to plaintiff's safety and ignored it. Further, on this record, plaintiff's complaints about

access to drug rehabilitation amount to no more than a disagreement with the treatment offered.

"Disagreements between an inmate and medical staff over the inmate's proper medical care do not

state a § 1983 claim unless exceptional circumstances are alleged."  *Wright v. Collins*, 766 F.2d

841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *accord*

*Lightsey*, 775 F.3d at 178 ("[W]e consistently have found such disagreements to fall short of

showing deliberate indifference.").  There are no exceptional circumstances alleged as to plaintiff's

Eighth Amendment claim regarding access to drug rehabilitation.

2. Dental Hygiene

Plaintiff complains about the lack of dental loops in his welfare commissary.  He contends that the Correctional Defendants changed the policy regarding what hygiene items are provided to indigent inmates, such as plaintiff.  In the past, he was provided five dental loops monthly with which to floss his teeth.  On an unspecified date, this policy was changed and plaintiff resorted to using thread to floss.  The thread harmed his gums.

In 2018, Pevia submitted a number of sick call slips seeking to see the dentist due to the injury to his gums.  Plaintiff was seen by a dental provider in the fall of 2018 and at that time it was recorded that plaintiff was using thread to floss and his gums were inflamed.  His teeth were cleaned, he was provided a dental rinse, and he was instructed to return in a year for routine follow up care. ECF 14-1 at 19-25.

 "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."  *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). "The deprivation of dental floss, is simply not so 'repugnant to the conscience' or 'incompatible with evolving standards of decency' that it satisfies the seriousness prong of a deliberate indifference claim." *Firor v. Hardinger*, JFM-15-2875, 2016 WL 4491715 *3 (D. Md. Aug. 24, 2016); *see also Kimble v. Jenkins*, 19-57-FDW, 2019 WL 2453615 * 2 (W.D. N.C. June 11, 2019) (holding lack of constant access to unlimited dental floss and/or complete absence of floss for a period of a few weeks did not satisfy the standards for cruel and unusual punishment under the Eight Amendment).

In determining whether the challenged conditions amount to cruel and unusual punishment, it is not the province of this court to determine how a particular prison might be more beneficently

operated.  The expertise of prison officials is entitled to due deference.  *See Sandin*, 515 U.S. at 482-83.

There is no evidence in the record that plaintiff suffered a serious injury as a result of the denial of the dental loops. Rather, plaintiff's injury was caused by his use of the thread.  Plaintiff provides no evidence to support a finding that the lack of flossing was serious enough to establish an unconstitutionally extreme deprivation.  Accordingly, the Correctional Defendants are entitled to summary judgment with respect to plaintiff's conditions of confinement claim.

G. Injunctive Relief

Plaintiff seeks injunctive relief directing defendants to change the policies regarding privacy during medical examinations and access to drug and alcohol rehabilitation.  ECF 1 at 10.

A party seeking a preliminary injunction or temporary restraining order must establish the following elements:  (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Failure to establish one of these elements is fatal to the request for injunctive relief.

For the reasons discussed above, plaintiff has failed to demonstrate the likelihood of success on the merits.  Therefore, his request for injunctive relief must be denied.

## IV. Conclusion

For the foregoing reasons, I shall dismiss the Complaint as to defendants Moyer, Hill, Bishop, and Warren. The motions of defendants Hoover, Lambert, and McKenzie, construed as

motions for summary judgment, shall be granted.[10] Plaintiff's motions for summary judgment and the Uphold Ruling Motion are denied.

A separate Order follows.


<u>February 24, 2023</u>                    _____/s/_____
Date                                      Ellen L. Hollander
                                          United States District Judge

---

[10] Having found no constitutional violation, the court need not address the Correctional Defendants' defense of qualified immunity.